## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**TAMEKIA OLIVE**                                    **CASE NO.  3:22-CV-05205**

**VERSUS**                                           **JUDGE TERRY A. DOUGHTY**

**MICHAEL TUBBS ET AL**                              **MAG. JUDGE KAYLA D. MCCLUSKY**

### MEMORANDUM RULING

Having considered Plaintiff's Motion to Fix Attorneys' Fees and Costs [Doc. No. 21], Defendant's Opposition to Plaintiff's Motion to Fix Attorney's Fees and Costs [Doc. No. 23], and Plaintiff's Reply Memorandum in Support of Plaintiff's Motion to Fix Attorney's Fees and Costs [Doc. No. 24] and for the reasons set forth below, **IT IS ORDERED** that Plaintiff's fees be set at $35,696.80 with Covington & Burling LLP (hereafter referred to as "Covington") receiving $31,275.00 and the ACLU receiving $4,421.80. **IT IS FURTHER ORDERED** that Plaintiff's costs be set at $822.00.

On September 7, 2022, Tamekia Olive ("Plaintiff" or "Olive") filed the Complaint[1] in this action against Michael Tubbs, in his official capacity, and Alvin Holmes, in his individual capacity, (hereafter referred to collectively as "Defendants") after she was arrested without probable cause. Olive brought claims under 42 U.S.C. § 1983, the federal constitution, and state law.[2] On March 7, 2023, the Clerk of Court entered Judgment for Plaintiff and against Defendants after receiving the Notice of Acceptance of Offer of Judgment.[3] This judgment awarded Plaintiff

---

[1] [Doc. No. 1].
[2] [Doc. No. 1].
[3] [Doc. No. 20].

"$10,000.00 plus costs and reasonable attorney fees as of the date of the offer, the amount of which shall be determined by the Court if the parties are unable to agree."[4]

The parties could not agree on reasonable attorneys' fees and costs, and Plaintiff petitioned the Court to fix the fees and costs.[5] Plaintiff seeks to recover $107,354.80 in attorneys' fees for approximately 330 hours of work and $2,091.26 in costs.[6] In sum, Plaintiff seeks $109,446.06. Defendants argue these fees are unreasonably excessive and requests the Court either substantially reduce the requested award or completely bar the recovery of attorneys' fees and costs.[7]

Attorney's fees and costs are recoverable when authorized by statute or contract. *F.D. Rich Co., Inc. v. U.S. For the Use of Industrial Lumber Company, Inc.*, 417 U.S. 116 (1974). 42 U.S.C. § 1988 provides that a prevailing party may recover attorney's fees in an action to enforce 42 U.S.C. § 1983. Fed. R. Civ. P. 54 further provides that a prevailing party may recover costs. Plaintiff is clearly the prevailing party in this action because the Clerk of Court entered a judgment in her favor and against Defendants.[8] Accordingly, Plaintiff is entitled to reasonable attorneys' fees and costs.

## I.    ATTORNEY'S FEES

Courts use a two-step process to calculate attorney's fees. *Combs v. City of Huntington, Texas*, 829 F3d 388, 391-392 (5th Cir. 2016). The court must first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* at 392.  In calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* Though the

---

[4] [Doc. No. 20].
[5] [Doc. Nos. 21 and 23].
[6] [Doc. No. 21].
[7] [Doc. No. 23].
[8] [Doc. No. 20].

lodestar is presumed reasonable, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010), the court may enhance or decrease it based on the twelve *Johnson* factors.[9] *Id.*

As discussed below, the Court finds 177.70 hours to be reasonable. It further finds that a rate of $95.00 for paralegal support and $175.00 to $375.00 for attorneys is reasonable. The Court does not find that any of the *Johnson* factors warrant a modification of the award. Ultimately, the Court finds that attorneys' fees of $35,696.80, with Covington receiving $31,275.00 and ACLU receiving $4,421.80, are reasonable.

### A.    Calculation of the Lodestar

The requesting party has the burden of providing the court with evidentiary support for the hours and rates it seeks. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiff submitted a time entry sheet and declaration for the ACLU attorneys and a time entry sheet and declaration for the Covington attorneys.[10] The ACLU declared it performed 30.8 hours of work at rates ranging from $95.00 to $350.00 and requested a total of $9,822.80 in fees. However, ACLU's attached declaration includes entries for 34.08 hours of work. The Court will the higher figure as the starting point for reductions. Covington declared it performed 295 hours of work at rates ranging from $160.00 to $600.00 and requested a total of $97,532.00 in fees. In sum, Olive's Counsel requested $107,354.80 for approximately 325 hours of work. As discussed below, the Court finds these requested fees are unreasonable.

---

[9] The twelve *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated by Blanchard v. Bergeron, 489 U.S. 87 (1989).

[10] [Doc. Nos. 21-3 and 21-4].

### a. Determining Reasonable Hours

The Court must first determine whether the requested hours are reasonable. The party who seeks the award of attorney's fees must provide the court with evidentiary support for the number of hours worked. *Hensley*, 461 U.S. at 433. The requesting party must further demonstrate that it exercised "billing judgment" by excluding unproductive, excessive, duplicative, or inadequately documented time entries. *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990). If the party fails to exercise billing judgment, the court may conduct a line-by-line analysis of the time records. *Green v. Admin. of the Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002). Alternatively, the Court "may make across-the-board cuts, so long as it sets forth a concise reason for its cuts." *Maxwell v. Angel-Etts of California, Inc.*, 53 F. App'x 561, 568 (Fed. Cir. 2002), opinion amended on reh'g (Jan. 2, 2003) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1399-1400 (9th Cir.1992)).

In this case, Plaintiff's counsel began representing Plaintiff on October 7, 2021.[11] On September 7, 2022, Plaintiff filed a complaint.[12] Between that date and February 17, 2023, when the Court received Notice of Acceptance of the Defendants' Offer of Judgment[13], Plaintiff filed pro hac vice applications,[14] executed a waiver of service,[15] received an answer from Defendants,[16] completed a Rule 26(f) Report,[17] filed motions to enroll as counsel,[18] and completed some discovery. For less than two years of representation, Plaintiff's counsel requests payment for approximately 330 hours of work completed by 12 attorneys and 1 paralegal. ACLU seeks to recover for 34.08 hours, and the Covington firm seeks to recover for 295.76 hours. The Defendants

---

[11] [Doc. No. 21-3].
[12] [Doc. No. 1].
[13] [Doc. No. 19]. The Notice of Acceptance of the Offer of Judgment was received less than a month after the Court issued the Scheduling Order [Doc. No. 18].
[14] [Doc. Nos. 2, 3, 4, and 5].
[15] [Doc. Nos. 10 and 11].
[16] [Doc. No. 13].
[17] [Doc. No. 14]
[18] [Doc. Nos. 16 and 17].

argue that these hours are not reasonable because the entries are duplicative and excessive.[19] They also assert that these entries include administrative and clerical tasks that are not recoverable.

The Court agrees a substantial reduction of hours is warranted here. While Plaintiff argues a reduction is unnecessary because they preemptively reduced all their hours by 20%, the Court finds the remaining hours are still unreasonable. The 20% reduction does exhibit billing judgment, but it does not automatically mean the remaining hours are reasonable. Just because Plaintiff engaged in initial cuts does not mean the Court can, or should, avoid review of the reasonableness of the submitted hours. The Court's task is to determine whether the submitted fee application includes reasonable hours. Ultimately, the Court finds that 177.70 hours reflects a far more reasonable number of hours for this case.[20] These new hours are broken down as follows:

| Timekeeper | Requested Hours | Adjusted Hours |
|---|---|---|
| **Stephanie Rodriguez,** *Paralegal* (ACLU) | 3.44 | 1.44 |
| **Meghan Matt,** *Staff Attorney* (ACLU) | 3.92 | 2.8 |
| **Bridget Wheeler,** *Legal Director* (ACLU) | 2.8 | 1.9 |
| **Nora Ahmed,** *Legal Director* (ACLU) | 23.92 | 13.38 |
| **Kelly Ng**, *Library Staff* (Covington) | .8 | 0 |
| **William Ossoff,** *Associate* (Covington) | 113.44 | 62.14 |
| **Lauren Johnson,** *Associate* (Covington) | 16.48 | 11.10 |
| **Sahel Sra,** *Associate* (Covington) | 44.40 | 23.02 |

---

[19] Plaintiff argues these objections are not warranted because Defendant did not identify specific objectionable entries. However, even where the opposing party does not make specific objections or show the hours are unreasonable, the Court must still "determine not only that the total hours claimed … are reasonable, but the hours were reasonably expended." *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 324 (W.D. Tex. 2007).

[20] The Defendants requested that the Court either wholly disallow attorneys' fees in this case or award the attorneys for only 15 hours of work. The Court finds both requests to be an extreme remedy that is not warranted. Counsel reached a desirable result for their client, and eliminating their compensation or reducing it to 15 hours is simply not reasonable.

| | | |
|---|---|---|
| **Lisa Bevilacqua,** *Associate* (Covington) | 28.16 | 14.70 |
| **Sarah Parker,** *Associate* (Covington) | 49.44 | 25.98 |
| **Sara Dennis,** *Associate* (Covington) | 18.56 | 10.08 |
| **Leslie Bailey,** *Associate* (Covington) | 5.52 | 2.76 |
| **Michael Scheininger,** *Senior Counsel* (Covington) | 18.96 | 8.40 |

These reductions account for vague, clerical, duplicative, and/or unnecessary entries Plaintiff included in the timesheets.

### i.      *Vague Entries*

Reductions are appropriate where time entries are "vague or incomplete." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 324 (W.D. Tex. 2007). *See also Sade v. S. Univ. Sys.*, No. CV 02-1164-A-M2, 2005 WL 8155807 at *6 (M.D. La. Sept. 28, 2005); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995); *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 773 (5th Cir. 1996) (rejecting entries for "library research," "analyzing documents," "reading background documents," etc.). If the documentation provides "the Court with little else than words such as 'pleadings,' 'documents,' or 'correspondence,' without stating in greater detail what job was done, the applicants take a chance the Court will reject some of the time spent." *DeHoyos*, 240 F.R.D. at 325.

Eliminating vague entries is appropriate in this case. The attached exhibits include 26.08 hours of vague entries that do not provide this Court with enough information to determine the reasonableness of the tasks. For example, several attorneys included entries for tasks like "Call with T. Olive", "Correspond with M. Tubbs", "Team meeting", sending an "email" to the client and other attorneys, and reviewing unknown documents. Because the Court cannot determine

whether such entries were reasonable, the Court will not consider these entries in the calculation of the lodestar. Removal of these vague entries reduces Scheininger's hours by 4.72, Ossoff's by 9.4, Sra's by 1.28, Parker's by 8.52, and Dennis's by 2.16 hours.[21]

### ii.   *Administrative or Clerical Tasks*

Reductions are appropriate for administrative or clerical tasks. *See Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 711 (E.D. La. 2001) (noting that a paralegal's tasks for "copying, organizing files, typing, or filing and delivering pleadings" were not legal work); *In re Trevino*, 648 B.R. 847, 887 (Bankr. S.D. Tex. 2023) (noting that unrecoverable clerical tasks include "maintaining files, copying, printing, labeling, and email documents, and communicating with court staff"); *Grant v. Gusman*, No. CV 17-2797, 2023 WL 315937 at *10 (E.D. La. Jan. 19, 2023) (stating that clerical tasks include "faxing, mailing, filing and delivering legal documents"); *Chacon v. City of Austin, Tex.*, No. A-12-CA-226-SS, 2015 WL 4138361 at *7 (W.D. Tex. July 8, 2015) (finding that clerical work included "electronically filing various documents", even where such entries included additional tasks related to "final edits").

The Court finds that 15.2 hours of the tasks billed here are clerical in nature. These entries include preparing materials for filing, drafting cover sheets, contacting the clerk of court, researching the names of opposing counsel, exchanging schedules for meetings, filing various documents with the court, and proofreading. The Court has removed these entries entirely, resulting in a reduction of 7.12 hours for Parker, 2.16 hours for Dennis, 2.96 hours for Ossoff, .8 hours for Scheininger, .56 hours for Johnson, and 1.6 hours for Rodriguez. Additionally, the Court is eliminating the entry by Kelly Ng for .8 hours for "Research RE: Scheduling order pull for c/m

---

[21] The Court did not remove Scheininger's, Ossoff's, and Sra's entries for their first call with Olive. While these entries were also vague, the Court determined that these entries were for an initial call with Olive.

990999.13059 (S. Parker)." This task appears administrative in nature in that it seems S. Parker directed a member of library staff to pull documents for her.

### iii.     Duplicative or Unnecessary Tasks

Reductions are appropriate where the requesting party includes hours that "are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. *See also Lalla*, 161 F. Supp. 2d at 706 (reducing the attorneys' requested hours because it was "not reasonable [for] each attorney [to charge] for each and every hour that each attorney spent, with no reductions for the duplication of effort"). The Court finds several areas where Plaintiff's counsel engaged in duplicative or unnecessary tasks.

First, the Court finds reductions are necessary for intra-counsel meetings and correspondence. ACLU and Covington charged 71.6 hours for conferences and team-related correspondence. Courts in this circuit have reduced counsel's hours where counsel engaged in numerous conferences and extensive communication with co-counsel. *See Taylor v. Washington Mut. Inc.*, No. 3:04-CV-0521, 2015 WL 5024508 at *9 (W.D. La. Aug. 24, 2015) (noting that the "problem with 'office conferences' is that often a casual mention of a case or the mere quick answer to a question will result in a billable time entry, even when nothing of moment was really accomplished" which can lead to abuse); *Olivia Y. v. Barbour*, No. 3:04CV251TSL-RHW, 2017 WL 11329889 at *5 (S.D. Miss. July 21, 2017) (reducing the time charged for telephone calls and meetings between attorneys because they were "somewhat more extensive than was necessary for the effective and efficient representation of plaintiffs*"); Gros v. New Orleans City*, No. CIV. A. 12-2322, 2014 WL 2506464, at *11 (E.D. La. June 3, 2014) (noting that courts have "discounted fee awards for excessive emails and telephone calls between attorneys and for overlapping time billed by multiple attorneys").

Reducing such entries is appropriate in this case. 71.6 hours of conferences and team-related correspondence, especially where multiple attorneys billed for the same conferences and correspondence, is simply not reasonable. These meeting relate to pre-filing work, the complaint, service of the complaint, the answer, and one set of discovery requests and responses. While such frequent meetings may be appropriate as the trial draws near, 71.6 hours of meetings and team-related correspondence is not reasonable for this phase of the litigation process. For example, this Court has previously found that 74.25 hours of conferences were reasonable for a case that spanned *over five years*. *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2005 WL 1578810 at *14 (E.D. La. June 28, 2005). In less than half that time, the attorneys here charged nearly the same number of hours. Additionally, unlike the attorneys in *White*, counsel here charged for the same conference and/or correspondence multiple times, resulting in an unnecessary duplication of hours. Because these hours are both excessive and duplicative, the Court will reduce the hours by 50%. Scheininger's hours are reduced by 3.08 hours, Sra's by 1.56, Ossoff's by 9.48, Bevilacqua's by 5.72, Parker's by 2.68, Bailey's by .28, Dennis's by 2.76, Johnson's by 1.76 hours, Ahmed's by 6.76 hours, Wheeler's by .4 hours, Rodriguez's by .4 hours, and Matt's by .92 hours.

Second, the Court finds a reduction is necessary for time spent prior to drafting the complaint. Covington and ACLU spent approximately 96.4 hours conducting research, reviewing documents, drafting outlines, and drafting a "pre-litigation memorandum"[22] *before* they began drafting a complaint. Where "more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), abrogated by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). Such is the exact case here. Not only did numerous individuals complete research

---

[22] This pre-litigation memorandum appears to have been used to evaluate the merits of the claims. The Court considers the drafting and review of this document to be "research."

on the same topics but the attorneys also compiled and reviewed this research in a pre-litigation memorandum. In other words, it appears that counsel here conducted and reviewed the same research numerous times in different formats.

Certainly, pre-complaint legal and factual research is necessary to ensure counsel does not file a frivolous complaint, but nearly 100 hours for pre-complaint tasks is not reasonable. Rather than resulting from the "complexity"[23] of the case, these hours instead seem to result from a duplication of hours.[24] Accordingly, the Court will reduce the requested hours by 50%. Approximately 50 hours of pre-complaint research and preparation is far more reasonable for a case of this complexity. Sra's hours are reduced by 14.72 hours, Ossoff's by 20.64, Bevilacqua's by 7.12, Ahmed's by 2.36, Bailey's by 2.48, and Scheininger's by .88. The Court is also eliminating a redundant entry from Johnson for meeting with the client, reading background materials, and conducting research, reducing her hours by 1.52.[25]

Third, the Court finds that a reduction is warranted for the 37.12 hours spent on the complaint to account for duplicative entries. Courts in this circuit have reduced (and sometimes eliminated) requested hours for "hours billed for reading/editing the work of other well-qualified attorneys." *Globe Glass & Mirror Co, v. Brown*, No. CIV. A. 94-4033, 1996 WL 325602 at *4 (E.D. La. June 12, 1996). Such duplication is present here. Two attorneys (Ossoff and Parker) drafted, edited, and updated the complaint. Four attorneys (Scheininger, Dennis, Ahmed, Wheeler) reviewed the complaint and provided feedback. While the Court finds that a certain level of review is necessary when drafting a complaint, having six attorneys draft, review, and revise the complaint

---

[23] Plaintiff has provided no evidence that this case was especially complex such that it would warrant this amount of pre-complaint research and review.
[24] For example, Sra, Ossoff, and Ahmed all conducted numerous hours of research to determine "potential claims" and would then meet and correspond with each other regarding their research. This method is an inefficient use of resources, and Defendants should not have to pay for such redundancy.
[25] Johnson appears to have transitioned into the team later in the litigation process, and these hours account for tasks that were almost wholly completed by co-counsel before she joined.

here is unreasonable. This case appears to be relatively straight-forward and does not raise complex issues of law and fact that would require this level of oversight and review from other attorneys. Additionally, a previous case found that 44.5 hours was "*slightly excessive* but not unreasonable" for drafting an amended complaint *and* conducting discovery. *White*, 2005 WL 1578810 at *14 (emphasis added). Yet Plaintiff here has charged nearly as many hours simply to prepare a complaint. Such hours are simply not reasonable, and the Court finds a reduction of 25% is necessary. Ossoff's hours are reduced by 3.96, Parker's by 2.44, Scheininger's by .54, Dennis's by .42, Ahmed's by 1.42, and Wheeler's by .5 to account for these duplicative entries.

Fourth, the Court finds that a 25% reduction is warranted for the 22.08 hours spent on discovery due to the duplicative nature of those entries. Five attorneys worked on drafting discovery in this case (Johnson, Dennis, Parker, Scheininger, and Matt). Three of these attorneys drafted, revised, and/or edited the discovery requests (Johnson, Dennis, and Parker), and all five attorneys reviewed the discovery requests. Because the Plaintiff has not provided any documentation showing this number of hours was reasonable for the discovery requests at issue, the Court hereby reduces the hours spent on discovery by 25%. Thus, Johnson's hours are reduced by 1.54, Dennis's by .98, Parker's by 2.7, Scheininger's by .1, and Matt's by .2.

Fifth, the Court finds a reduction is warranted for the 8.88 hours relating to Olive's criminal claims. This motion to fix attorney's costs was made in response to Olive's civil claims. These two claims are interrelated because Olive's civil claim is for her allegedly false arrest. However, even though these cases are related, that does not warrant including a charge for every contact with her

criminal attorney to receive an update. Accordingly, the Court reduces these entries by 50%. Sra's hours are reduced by 2.4 and Ossoff's hours are reduced by 2.04.[26]

Finally, the Court finds a 50% reduction is warranted for the 21.2 hours spent on the public records requests. Plaintiff sent two public records requests in this case. Plaintiff's counsel spent 21.2 hours drafting these requests and reviewing the responses. The Court finds that these hours are unwarranted and further finds these entries are especially duplicative. Four attorneys worked on these requests. Ossoff primarily drafted and revised while both Sra and Scheininger extensively reviewed the drafted requests. The Plaintiff has not provided any documentation to show that two attorneys reviewing a public records request was necessary. Additionally, Ossoff, Sra, and Bevilacqua all reviewed the results. The Court finds it was unnecessary for three attorneys to review the same documents, especially when Sra billed time for drafting a summary of such results. Accordingly, the Court finds that a 50% reduction is warranted to account for the duplicative nature of these entries. Ossoff's hours are reduced by 2.82, Sra's by 1.42, Scheininger's by .44, and Bevilacqua's by .62.

### iv.    Block Billing

Reductions may be appropriate for block-billing where the court cannot evaluate the reasonableness of the time spent. *Taylor*, 2015 WL 5024508. However, the Court must be careful in eliminating entries for block-billing alone. Where courts could determine the reasonableness of time spent on the tasks within the entry, such entries have not been rejected. *Id*. In other words, denying an entry simply because it includes block billing "is not an appropriate remedy." *Barrow*

---

[26] The Court notes that many of these entries were vague and could have merited total elimination from the considered hours. However, because the Court could somewhat discern the purpose of these calls and other entries, the Court finds a reduction is more appropriate.

*v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456 at *5 (N.D. Tex. Dec. 20, 2005), aff'd, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

The Defendants argue that Olive's Counsel's hours should be eliminated entirely because of block billing. The Court disagrees. While this fee application includes several block-billed entries, the Court was able to discern the reasonableness of the hours spent on those tasks and has accordingly reduced such entries in the analysis above if necessary. The Court does not find that further reductions are necessary because of block billing.

Ultimately, the Court finds that 177.70 hours reflects a more reasonable number of hours for this case. These reductions account for the extreme lack of billing judgment exercised by Plaintiff's counsel by addressing vague, clerical, duplicative, and/or unnecessary entries.

### b. *Determining a Reasonable Rate*

The Court must now determine whether the rate requested by Olive's Counsel in this case is reasonable and, if not, what a reasonable rate is. A requesting attorney's "[h]ourly rates are to be computed according to the prevailing market rates in the relevant legal market." *Hopwood v. Texas*, 236 F.3d 256, 279 (5th Cir. 2000). *See also Blum v. Stenson*, 465 U.S. 886, 895 (1984); *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 381 (5th Cir. 2011); *Montgomery v. Comenity Bank*, No. CV 20-235-SDD-RLB, 2022 WL 17830926 at *2 (M.D. La. Aug. 3, 2022), report and recommendation adopted sub nom. *Montgomery v. Comenity Bank*, N.A., No. CV 20-235-SDD-RLB, 2022 WL 16825179 (M.D. La. Nov. 8, 2022) (stating "[t]his rate is the market rate for similar services by similarly trained and experienced attorneys in the relevant legal community"). The relevant legal market is where the district court sits. *Calix v. Ashton Marine LLC,* No. CV 14-2430, 2016 WL 4194119, at *3 (E.D. La. July 14, 2016). In this case, the relevant legal market is the Monroe community.

The party who seeks the award of attorney's fees has the burden of proving that such rates are reasonable. *Hensley*, 461 U.S. at 433. In general, the requesting party establishes the reasonableness of the rate through affidavits of attorneys practicing in the relevant legal market instead of relying on their own affidavits. *Tab-in-Action, Inc. v. Monroe City Sch. Bd.*, No. CV 17-0570, 2017 WL 3445652 at *3 (W.D. La. Aug. 10, 2017). Additionally, the Court may rely on its knowledge of rates in the relevant legal market and evidence that courts relied on in other cases. *Id.* Olive's Counsel has requested rates ranging from $200.00 to $600.00 per hour for its attorneys and $95.00 per hour for its paralegal.

Olive's counsel argues their requested rates are reasonable because they substantially reduced their customary billing rates and aligned the rate with rates previously found reasonable in the Fifth Circuit.[27] Plaintiff primarily relied on declarations from fee-requesting attorneys and caselaw to support the reasonableness of these rates. Neither the ACLU nor Covington produced supporting affidavits from local attorneys. As such, the Court must rely on its own experience and relevant caselaw to determine whether the requested rates here are reasonable.

Olive's counsel cited five cases to assert that rates of up to $650.00 are reasonable in the Fifth Circuit. The Court does not find these cases persuasive. Plaintiff cites two cases from different legal markets. *See Cole v. Collier,* No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) (examining the Houston market); *DeHoyos*, 240 F.R.D. 269 (examining the San Antonio market). Neither Houston nor San Antonio are like Monroe as both are much larger cities with different legal markets and customary rates. Plaintiff also relies on a multi-district litigation case

---

[27] The Court notes that generally a requesting attorney's proposed hourly rate "is prima facie reasonable when he requests that the lodestar be computed at his or her 'customary billing rate,' the rate is within the range of prevailing market rates, and the rate is not contested." *Sade*, 2005 WL 8155807 at *4. *See also Louisiana Power & Light Co.*, 50 F.3d at 328. Presumably, then, the requested fees here would be reasonable since they are allegedly lower than the customary billing rate. The problem with this argument is that the Defendants have contested the rate. And, as discussed below, these rates do not fall within the range of prevailing rates in the Monroe legal community. As such, these rates are not prima facie reasonable.

from this district to argue that a rate of up to $450.00 is reasonable. *See In re Actos (Pioglitazone) Prod. Liab. Litig.*, 274 F. Supp. 3d 485 (W.D. La. 2017). However, the rate in *Actos* was a blended hourly rate of all submitters because courts had previously found that using "the average of the billing rates for all submitters … rather than limiting the decision to a reasonable hourly rate within *the court's* locality" was appropriate in an MDL action. *Id*. at 518. That finding has no bearing on this case and does not illustrate a reasonable rate for the Monroe legal community.

The most "on point" case cited by Plaintiff is *Rivas v. Beaucoup Crawfish of Eunice, Inc*., No. 6:12-CV-02610, 2014 WL 5488390 at *6 (W.D. La. Oct. 29, 2014), which found that rates between $200.00 and $460.00 were reasonable.[28] What distinguishes *Rivas* from the case at bar is that the attorneys in *Rivas* produced "evidence that these rates [were] within the prevailing market rates of the Chicago area legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Id*. The Court thus aligned the rates with the Chicago market. *Id*. Conversely, Plaintiff here made no such evidentiary showing and instead only stated the requested rates are below their standard rate. Whether this "standard" rate, in fact, accords with their local markets has not been shown. This same distinction can also be made with the final case relied upon by plaintiffs, *Capitol City Produce Co. v. Sammy's Holdings, L.L.C.*, No. CV 20-00030-BAJ-SDJ, 2020 WL 6938814 (M.D. La. Nov. 25, 2020). In this case, the court found that rates ranging from $300.00 to $450.00 were "reasonable for the location and reputation of the law firms." *Id*. at *9. Once again, the Plaintiff here provided no evidence that their rates are typical of the areas where they are located or that the prestige of their firm warrants a rate that is higher than the reasonable rate in the Monroe community.

---

[28] It should be noted that the defendants in *Rivas* did not contest the requested rates as is the case here.

Additionally, the *Rivas* court relied on the experience of the attorneys in determining whether such rates were reasonable. *Rivas*, 2014 WL 5488390 at *6. The attorney receiving $460.00 an hour was a partner with more than 22 years of experience, the attorney receiving $400.00 an hour was a partner with more than 14 years of experience, and the attorney seeking $340.00 an hour was a partner. *Id.*  Local counsel from Lafayette, who had over 38 years of litigation experience, received only $200.00 an hour. *Id.* Conversely, Plaintiff here has submitted little evidence as to the experience of the requesting attorneys. Scheininger has 50 years of experience, Ahmed has 10 years of experience, Wheeler has approximately 7 years of experience, and Matt has approximately 2 years of experience. Plaintiff provided no evidence regarding the experience of Rodriguez, Bailey, Sra, Bevilacqua, Parker, Dennis, Ossoff, or Johnson. Only Scheininger has experience that is comparable to the attorneys in *Rivas*. Accordingly, the *Rivas* finding holds little weight as to the reasonableness of the rates in the case at bar.

Ultimately, the Court finds that reasonable rates in the Monroe area generally range from $200.00 to $300.00 per hour for attorneys and $100.00 per hour for paralegals. In a recent Report and Recommendation adopted by this Court, the Magistrate Judge relied on an affidavit from a local attorney in the Monroe area when determining whether a rate was reasonable. *Carr v. Kijakazi,* No. CV 3:21-04454, 2023 WL 3168676 at *2 (W.D. La. Apr. 13, 2023), report and recommendation adopted, No. CV 3:21-04454, 2023 WL 3168343 (W.D. La. Apr. 28, 2023). This affidavit established that attorneys in this area generally bill in the range of $200.00 to $300.00 per hour, "particularly those with more than 20 years of experience." *Id*. Additionally, another "preeminent local attorney" charged $250.00 per hour. *Id*. The Court finds this affidavit persuasive for determining reasonable rates in this case. The Court also found other cases where attorneys

16

with over 20 years of experience received $300.00 to $375.00 per hour.[29] Finally, paralegal rates of up to $100.00 have been found to be reasonable. *Tab-in-Action*, 2017 WL 3445652.

The Court has considered these cases and finds that a reasonable range for attorney fees in the Monroe area is between $175.00 and $375.00 per hour, and a reasonable rate for paralegal work is approximately $100.00. The requested rates will be adjusted in accordance with these findings.

Scheininger has the most experience in this action with approximately 50 years of litigation experience. As such, the Court finds he is entitled to a rate in the upper end of the reasonable range and awards him $375.00 per hour.[30] Ahmed, with ten years of experience, is also entitled to a higher rate, and the Court awards her $250.00 per hour. A rate of $175.00 per hour is reasonable for both Johnson and Ossoff to account for the hours they billed prior to bar admission. As for the other attorneys, the Courts finds that $200.00 per hour is an appropriate reasonable rate. Rodriguez is a paralegal, and the Court finds that the requested rate of $95.00 is reasonable.

In sum, the Court has adjusted the rates as follows:

| Timekeeper | Requested Rate | Adjusted Rate |
|---|---|---|
| **Stephanie Rodriguez,** *Paralegal* (ACLU) | $95.00 | $95.00 |
| **Meghan Matt,** *Staff Attorney* (ACLU) | $225.00 | $200.00 |
| **Bridget Wheeler,** *Legal Director* (ACLU) | $300.00 | $200.00 |

[29] *Campbell v. Verma Systems, Inc.*, No. 21-272-BAJ-RLB, 2022 WL 879497, at *2 (M.D. La. March 23, 2022) (finding that $375.00 an hour was reasonable for an attorney with 22 years of experience); *Hollenbeck v. False River Veterinary Clinic*, No. 20-764, 2021 WL 5467021, at *3 (M.D. La. Nov. 1, 2021) (finding that $300.00 an hour was reasonable for an attorney with approximately 27 years of litigation experience); *Hamdan v. Tiger Bros. Food Mart Inc.*, No. 15-412, 2018 WL 3029991, at *12 (M.D. La. May 22, 2018) (finding that $375.00 an hour was reasonable for an attorney with approximately 30 years of experience in intellectual property); *Montgomery*, 2022 WL 1783092 at *3 (finding that rates of upwards of $300 an hour were appropriate for attorneys with over 10 years of experience).
[30] The Court notes that Scheininger does have more experience than the attorneys in the cases discussed above that awarded between $300.00-$375.00. However, Scheininger has failed to meet his burden of proving his requested rate of $600.00 was reasonable. This rate is higher than the $275.00 that was found reasonable for an attorney with 40-years' experience in *Bushnell v. Natali*, No. 17-01146, 2019 WL 3980698, at *2 (W.D. La. Aug. 21, 2019).

| | | |
|---|---|---|
| **Nora Ahmed,** *Legal Director* (ACLU) | $325.00 | $250.00 |
| **William Ossoff,** *Associate* (Covington) | $200.00 | $175.00 |
| **Lauren Johnson,** *Associate* (Covington) | $200.00 | $1.00 |
| **Sahel Sra,** *Associate* (Covington) | $350.00 | $200.00 |
| **Lisa Bevilacqua,** *Associate* (Covington) | $350.00 | $200.00 |
| **Sarah Parker,** *Associate* (Covington) | $350.00 | $200.00 |
| **Sara Dennis,** *Associate* (Covington) | $350.00 | $200.00 |
| **Leslie Bailey,** *Associate* (Covington) | $600.00 | $200.00 |
| **Michael Scheininger,** *Senior Counsel* (Covington) | $600.00 | $375.00 |

### c.   Calculating the Lodestar

The Court must now determine the lodestar. The lodestar "is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Combs v. City of Huntington, Texas*, 829 F3d at 391-392. The lodestar in this case is $35,696.80, with Covington receiving $31,275.00 and the ACLU receiving $4,421.80. The breakdown of the lodestar is as follows:

| Timekeeper | Hours x Rate | Lodestar |
|---|---|---|
| **Stephanie Rodriguez,** *Paralegal* (ACLU) | 1.44 x $95.00 | $136.80 |
| **Meghan Matt,** *Staff Attorney* (ACLU) | 2.8 x $200.00 | $560.00 |
| **Bridget Wheeler,** *Legal Director* (ACLU) | 1.9 x $200.00 | $380.00 |
| **Nora Ahmed,** *Legal Director* (ACLU) | 13.38 x $250.00 | $3,345.00 |
| **Kelly Ng,** *Library Staff* (Covington) | 0 x $160.00 | 0 |

| | | |
|---|---|---|
| **William Ossoff,** *Associate* (Covington) | 62.14 x $175.00 | $10,874.50 |
| **Lauren Johnson,** *Associate* (Covington) | 11.10 x $175.00 | $1,942.50 |
| **Sahel Sra,** *Associate* (Covington) | 23.02 x $200.00 | $4,604.00 |
| **Lisa Bevilacqua,** *Associate* (Covington) | 14.70 x $200.00 | $2,940.00 |
| **Sarah Parker,** *Associate* (Covington) | 25.98 x $200.00 | $5,196.00 |
| **Sara Dennis,** *Associate* (Covington) | 10.08 x $200.00 | $2,016.00 |
| **Leslie Bailey,** *Associate* (Covington) | 2.76 x $200.00 | $552.00 |
| **Michael Scheininger,** *Senior Counsel* (Covington) | 8.40 x $375.00 | $3,150.00 |

### B.    The *Johnson* Factors

The Court now turns to whether the *Johnson* factors warrant a departure from the lodestar. The twelve *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. "If a factor has already been accounted for in the lodestar calculation, it may not be used to adjust the lodestar." *Cole*, 2018 WL 2766028 at *13. "The lodestar … is presumptively reasonable and should be modified only in exceptional cases." *Rivas*, 2014 WL 5488390 at *5. If the court modifies the fee award, it must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. The Court ultimately finds that no departure is warranted in this case.

The Court already considered both the customary fees and experience, reputation, and ability of the attorneys in determining a reasonable rate and considered both the time and labor required and the novelty and difficulty of the issues in determining reasonable hours. None of the remaining factors warrant an adjustment. Nothing in this case indicates it required a specialized set of skills to litigate or that time limitations existed that would warrant an upward or downward departure. Nor does the amount involved in this case and the ultimate result (an offer of judgment for $10,000.00) suggest the lodestar should be adjusted. Additionally, the Plaintiff provided no evidence as to a prior relationship with counsel, whether the fee is fixed or contingent, and whether acceptance of this claim precluded other employment (and the extent of such preclusion), so the Court does not find these factors warrant a departure. As for undesirability, the Court concedes that a case of this nature may present issues with the community that could be undesirable. However, counsel in this case was not from the local area, and it does not appear that anything in this case was particularly undesirable such that a departure is warranted. Finally, the Court notes that the $10,000.00 award is not so unique or unusual that a departure from the lodestar would be warranted. Accordingly, the Court finds that none of the *Johnson* factors warrant an adjustment of the lodestar in this case.

## II.    ATTORNEYS' COSTS

Federal courts may only award costs authorized by statute. *See Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir.1993) (finding that "a district court may decline to award the costs listed in the statute but may not award the costs omitted from the list."). 28 U.S.C. § 1920 governs the award of costs here. The Court's discretion to award costs under 28 U.S.C. § 1920 is not unlimited: the costs must be allowable under 28 U.S.C. § 1920, supported by proper documentation, and reasonable. *Sigur v. Emerson Process Management*, 2008 WL 1908590, *2

(M.D. La. Feb. 21, 2008) (finding that "a court may not award costs to the prevailing party unless it first determines that the expenses are allowable cost items and that the costs are reasonable, both in amount and necessity to the litigation"). 28 U.S.C. § 1920 allows a court to tax as costs (1) fees of the clerk and marshal; (2) fees for transcripts; (3) fees for printing and witnesses; (4) fees for copies of papers "necessarily obtained for use in the case"; (5) docketing fees; and (6) compensation of court-appointed experts and interpreters.

"Items proposed by winning parties as costs should always be given careful scrutiny." *Louisiana Power & Light Co.*, 50 F.3d 319 (quoting *Farmer v. Arabian American Oil Co*., 379 U.S. 227, 235 (1964)). In this case, Plaintiff has requested $2,091.26 in costs. These costs include $402.00 for filing the complaint, $420.00 for filing pro hac vice applications, $742.96 for Westlaw research, $37.10 for PACER research, and $489.20 for submitting the public records requests. The Plaintiff provided no supporting documentation for these costs beyond the Declaration of Michael Scheininger. Nor has Plaintiff provided any response or argument to Defendant's assertion that the costs in this case are not recoverable under 28 U.S.C. § 1920. Ultimately, the Court finds that only the filing costs for the complaint and pro hac vice applications are recoverable.

Costs related to the filing of the complaint and pro hac vice applications are recoverable under 28 U.S.C. § 1920. *Giner v. Est. of Higgins*, No. EP-11-CV-126-KC, 2012 WL 2397440 at *4 (W.D. Tex. June 22, 2012) (holding that "[g]enerally, 28 U.S.C. § 1920 allows the prevailing party in an action to recover filing fees"). Accordingly, the Court finds that Plaintiff may recover $822.00 for the filing fees in this case.

However, the other requested costs in this case are not recoverable. Plaintiff requested $780.06 for research completed on both Westlaw and PACER. Research costs do not fall in any of the enumerated categories in 28 U.S.C. § 1920, so these costs are not recoverable. The Fifth

21

Circuit has stated a district court split exists as to whether PACER fees are recoverable. *Zastrow v. Houston Auto M. Imports Greenway*, Ltd., 695 F. App'x 774, 780 (5th Cir. 2017). However, both this case and the district court case it cites suggest that PACER fees would be recoverable in the context of securing "necessary" copies rather than for research. *Id. See also Giner*, 2012 WL 2397440 (noting that "Section 1920 may very well not provide for the recovery of the cost of conducting research on PACER"). Because Plaintiff used PACER specifically to conduct research in this case, the Court finds that recovery for these research costs is not allowed. Accordingly, the Court denies the requests for research costs on Westlaw and PACER.

Finally, submitting public records requests is not included on taxable costs in 28 U.S.C. § 1920. Plaintiff has not directed the Court to any binding authority allowing for the recovery of such costs under this statute nor has the Court found such authority in its own independent research. Accordingly, the Court denies the request for costs related to submitting the public records requests. Having found that only the filing fees for the complaint and pro hac vice applications are recoverable, the Court awards costs in the total amount of $822.00.

## III.     CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Plaintiff's fees be set at $35,696.80 with Covington receiving $31,275.00 and the ACLU receiving $4,421.80.

**IT IS FURTHER ORDERED** that Plaintiff's costs be set at $822.00.

Terry A. Doughty
United States District Judge